# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **v.** : | **CR. NO. 19-4 (ESH)(RMM)** |
| : | |
| **MARK HARRIS,** : | |
| : | |
| **Defendant.** : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § 3142 (f)(2)(A) and 18 U.S.C. § 3142 (d)(1)(A)(ii) of the federal bail statute.  The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

## Introduction

Mark Harris, a thirty-one (31) year old male with several prior convictions for a variety of offenses including violent offenses and gun offenses, has been charged by indictment with one count of Escape from Custody, in violation of Title 18 U.S.C. § 751 (a).  The defendant's indictment indicating a finding of probable cause that he knowingly escaped from the custody of the Bureau of Prisons, coupled with his prior convictions, support the government's contention that the defendant should be held without bond pending trial.

**Procedural History and Applicable Authority**

At the initial appearance on March 11, 2019, the government orally moved for detention pending trial pursuant to 18 U.S.C. § 3142 (f)(2)(A) and 18 U.S.C. § 3142 (d)(1)(A)(ii) of the federal bail statute, which was granted by the Court. The Court set a detention hearing for Thursday, March 14, 2019.

The government contends that the defendant is a flight risk as well as a danger to the community. The government must establish by preponderance of the evidence that a defendant poses a risk of flight. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986). And must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). In an indicted case at a detention hearing, the government may proffer evidence. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case causes the government to ask the Court to conclude that there is no condition or combination of conditions that would assure the appearance of the defendant as required or the safety of the community. Therefore, Mr. Harris should be detained. *See* 18 U.S.C. § 3142(e)(1).

## **Nature and Circumstances of the Offenses Charged**

As part of the defendant's sentence in relation to a charge of Bail Reform Act violation, he was allowed to complete the end portion of his sentence at Hope Village residential reentry center. On August 1, 2018, the defendant started his halfway house placement at Hope Village. Less than one month later, on September 7, 2018, the defendant signed out to eat at the facility at approximately 7:11P.M. The defendant then returned at approximately 7:30P.M.

Staff at Hope Village asked the defendant to empty his pockets upon his return to the facility. At this time, Mr. Harris placed some plastic cups on the table, as well as a Core water bottle on the table. When staff tested the water bottle, it was determined to contain alcohol. The defendant was asked to submit to a breathalyzer test and he refused. Mr. Harris then returned to his room, gathered his personal belongings and left the halfway house. As a result, the defendant was placed on escape status and was dropped from the count for the facility. On or about January 3, 2019, the grand jury indicted the defendant on one count of Escape and on or about March 11, 2019, the defendant was arrested.

As set forth fully above, the first factor, the nature and circumstances of the offense charged, clearly weighs in favor of detention. Here, a grand jury found probable cause to believe that Mr. Harris escaped from the custody of the Bureau of Prisons. The nature of this offense weighs heavily in favor of detention.

## **Weight of the Evidence Against the Defendant**

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against Mr. Harris is quite strong. As set forth above, Mr. Harris knowingly and willingly absconded from the residential reentry center, in violation of the terms of

his furlough. There is no question that the defendant knew about the rules and requirements related to his furlough to and residency at the residential reentry center because he signed documentation memorializing his understanding on the Furlough Application – Approval and Record, *See* Government's Exhibit #1 (attached), and required Conditions of Furlough form, *See* Government's Exhibit #2 (attached).

### Mr. Harris' History and Characteristics

The third factor, the history and characteristics of the person, similarly weigh in favor of the detention. Mr. Harris has several prior convictions to include:

- Felon in Possession of a Firearm, Possession of a Firearm During a Crime of Violence (Washington, D.C., 2008)
- Bail Reform Act Violation – Felony (Washington, D.C., 2007)
- Bail Reform Act Violation – Felony (Washington, D.C., 2007)
- Attempted Unauthorized Use of a Vehicle (Washington, D.C., 2007)
- No Permit (Washington, D.C., 2009)
- Attempted Possession of a Controlled Substance - Marijuana (Washington, D.C., 2007)
- No Permit (Washington, D.C., 2004)

The government further directs the Court's attention to additional information contained on page 4 of the defendant's Pretrial Services Agency report. The defendant was serving a sentence in a felony matter at the time that he escaped from custody. Mr. Harris had just completed terms of imprisonment of 108 months. Upon information and belief, the defendant remains under sentence due to his escape in this matter. Notably, as set forth in the pretrial services agency report, the defendant's ratings amongst all risk categories, namely Failure to

Appear Risk, Global Re-arrest Risk and Dangerous/Violent Re-Arrest Risk, are designated as high. Mr. Harris has clearly demonstrated that he cannot be trusted to report for court appearances or refrain from engaging in criminal conduct.   The defendant should not be released.

### Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention.   Though the charged offense here is Escape from Custody, the government notes that at the time of this arrest, the defendant was under order of the court to complete a sentence in relation to a violent offense.   The government further notes that this matter constitutes Mr. Harris' sixth felony offense.   For these reasons, the government submits that in order to protect the community, the defendant should be held without bond pending trial.

### There is No Condition or Combination of Conditions that Would Ensure Mr. Harris' Compliance with Court-Ordered Release Conditions

The defendant's criminal history and instant arrest warrant pre-trial detention. The government's evidence strongly supports the argument that Mr. Harris will continually disregard the Court's efforts to reasonably control his behavior through conditions of release and keep the community safe.

### Conclusion

The Court should grant the government's motion to detain Mr. Harris pending trial because he has demonstrated that his appearance cannot be assured at future court proceedings and that he presents a danger to the community.

        Respectfully submitted,

        JESSIE K. LIU
        UNITED STATES ATTORNEY
        D.C. Bar No. 472-845

By:     /s/
        LISA NICOLE WALTERS
        D.C. Bar No. 974-492
        Assistant United States Attorney
        555 Fourth Street, N.W., Fourth Floor
        Washington, D.C. 20530
        Telephone: (202) 252-7499
        E-mail: Lisa.Walters@usdoj.gov

## CERTIFICATE OF SERVICE

I, Lisa N. Walters, certify that, on this 13th day of March, 2019, the government filed a copy of the foregoing Memorandum in Support of Pre-Trial Detention on the Electronic Case Filing ("ECF") system and served a copy on counsel for Mr. Harris, Tony Miles, Esquire, through the ECF.

        /s/
        Lisa N. Walters
        Assistant United States Attorney

# GOVERNMENT'S EXHIBIT #1

BP-A0291
NOV 12

**FURLOUGH APPLICATION - APPROVAL AND RECORD** CDFRM

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| Inmate's Name | Register No. | Institution (address and phone number) |
|---|---|---|
| Mark, Harris | 38924-007 | Federal Correctional Complex, USP<br>P.O. Box 5666<br>Yazoo City, MS 39194<br>662-716-1241 |

### APPLICATION

| Purpose of Visit | Sentry Assignment | Date/Time of Departure | Date/Time of Return |
|---|---|---|---|
| RRC Furlough | FURL TRANS<br>CDC 2FJ | 08-01-2018 @10:00 a.m. | N/A |

Furlough Address (include name of responsible party if applicable):
2840 Langston Place, S.E. Washington, DC 20020

Telephone No. (Including Area Code): (202)678-1551

| Point of Contact for Emergency: | Method of Transportation: | Detainer/Pending Charges | Verified by (CSM) Staff |
|---|---|---|---|
| FCC Yazoo City, MS | Town Driver/Greyhound/Taxi | ___ YES  X NO | [signature] |

NOTE TO APPLICANT: You are reminded that should any unusual circumstances arise during the period of your visit, you should notify the institution immediately at telephone: 662-716-1241

### UNDERSTANDING

I understand that if approved, I am authorized to be only in the area of the destination shown above and at ordinary stopovers or points on a direct route to or from that destination.  <u>I understand that my furlough only extends the limits of my confinement and that I remain in the custody of the Attorney General of the United States. If I fail to remain within the extended limits of this confinement, it shall be deemed as escape from the custody of the Attorney General, punishable as provided in Section 751 of Title 18, United States Code.</u>  I understand that I may be thoroughly searched upon my return to the institution and that I will be held responsible for any item of contraband or illicit material that is found. I have read or had read to me, and I understand that the foregoing conditions govern my furlough, and will abide by them. I have read or had read to me, and I understand the CONDITIONS OF FURLOUGH as set forth on the reverse of this form.

[signature]    Witness                                [signature Mark Harris]   Signature of Applicant
Unit Secretary/ 7-3-18                               7-3-18
Title/Date                                           Date Signed

### ADMINISTRATIVE ACTION

| Information Verified by: C.Pullum | Title: Case Manager |
|---|---|
| Name of USPO Notified: N/A | Date of Notification: N/A |

Does USPO Have Any Objections to Furlough? **No**  (If so, explain)

### APPROVAL

| Approval for the above named Inmate to leave the Institution on a furlough as outlined is hereby granted in accordance with P.L. 93-209 and the BOP Furlough Program Statement. The period of furlough is | As CMC, I have reviewed the Request for Activity Clearance (404) and the SENTRY CIM Clearance and Separatee Data and I recommend the inmate be approved to participate in this furlough. |
|---|---|
| From 08-01-2018 @ 10:00 a.m. to 08-02-2018 NLT 1:50 p.m. | ☒ Yes ☐ No Signature of CMC [signature] |

Chief Executive Officer (Name, Title & Date) - Signature certifies approval and CIMS Clearance
☒ Approval
☐ Disapproval    M. Martin, Complex Warden   [signature]           Date: 7/30/18

Reason(s) for disapproval:

### RECORD

| Date/Time Released: 08-01-2018 at 10:00 a.m. | Date/Time Returned: N/A |
|---|---|

Travel Schedule: DPT FCC Yazoo City at 10:00 a.m. on 08-01-2018 en route to the Jackson, MS Greyhound Bus Station. DPT Jackson, MS at 12:45 p.m. via Greyhound. ARV in Birmingham, AL at 5:15 p.m. DPT Birmingham, AL at 5:50 p.m. ARV in Anniston, AL at 6:50 p.m. DPT Anniston, AL at 7:10 p.m. ARV in Atlanta, GA at 9:35 p.m. (TRANSFER) DPT Atlanta, GA at 10:45 p.m. (TRANSFER) On 08-02-2018 ARV in Charlotte, NC at 3:00 a.m. DPT Charlotte, NC at 3:45 a.m. ARV in RS Mebane Exit 152, NC at 5:45 a.m. DPT RS Mebane Exit 152, NC at 6:15 a.m. ARV in Richmond, VA at 9:15 a.m. (TRANSFER) DPT Richmond, VA at 11:00 a.m. ARV in Washington, DC at 1:05 p.m. Continue via taxi, en route to Hope Village, Inc. 2840 Langston Place S.E. Washington, DC 20020. Arv no later than 1:50 p.m.

# GOVERNMENT'S EXHIBIT #2



Inmate's Photo

**Conditions of Furlough**

(a) An inmate who violates the conditions of a furlough may be considered an escapee under 18 U.S.C. § 4082 or 18 U.S.C. § 751, and may be subject to criminal prosecution and institution disciplinary action.

(b) A furlough will only be approved if an inmate agrees to the following conditions and understand that, while on furlough, he/she:

    (1) Remains in the legal custody of the U. S. Attorney General, in service of a term of imprisonment;
    (2) Is subject to prosecution for escape if he/she fails to return to the institution at the designated time;
    (3) Is subject to institution disciplinary action, arrest, and criminal prosecution for violating and condition(s) of the furlough;
    (4) May be thoroughly searched and given a urinalysis, breathalyzer, and other comparable test, during the furlough or upon return to the institution, and must pre-authorize the cost of such test(s) if the inmate or family members are paying the other costs of the furlough. The inmate must pre-authorize all testing fee(s) to be withdrawn directly from his/her inmate deposit fund account;
or     (5) Must contact the institution (or United States Probation Officer) in the event of arrest, any other serious difficulty or illness; and
    (6) Must comply with any other special instructions given by the institution.

Special Instructions:

It has been determined that consumption of poppy seeds may cause a positive drug test which may result in disciplinary action. As a condition of my participation in community programs, I will not consume any poppy seeds or items containing poppy seeds.
(Note: Additional conditions may be added to Special Instructions as warranted).

(c) While on furlough, the inmate must not:
(1) Violate the laws of any jurisdiction (federal, state, or local);
(2) Leave the area of his/her furlough without permission, except for traveling to the furlough destination, and returning to the institution;
(3) Purchase, sell, possess, use, consume, or administer any narcotic drugs, marijuana, alcohol, or intoxicants in any form, or frequent any place where such articles are unlawfully sold, dispensed, used, or given away;
(4) Use medication that is not prescribed and given to the inmate by the institution medical department or a licensed physician;
(5) Have any medical/dental/surgical/psychiatric treatment without the staff's written permission, unless there is an emergency. Upon return to the institution, the inmate must notify institution staff if he/she received any prescribed medication or treatment in the community for an emergency;
(6) Possess and firearm or other dangerous weapon;
(7) Get married, sign any legal papers, contracts, loan applications, or conduct any business without staff's written permission;
(8) Associate with persons having a criminal record or with persons who the inmate knows to be engaged in illegal activities without staff's written permission;
(9) Drive a motor vehicle without staff's written permission, which can only be obtained if the inmate has proof of a currently valid driver's license and proof of appropriate insurance; or
(10) Return from furlough with anything the inmate **did** not take out with him/her (for example, clothing, jewelry, or books)

I have read, or had read to me, and I understand the above conditions concerning my furlough and agree to abide by them.

Inmate's signature: Mark, Harris/ _Mark Harris_ Reg. No.: 38924-007          Date: 7.3.18

Signature/printed Name of Staff Witness: A. Longley

Record copy - Inmate Central File; Copy - Control Center, Chief Correctional Services Supervisor, Correctional Systems Department, Inmate Use on Furlough

FILE IN SECTION 5 UNLESS APPROPRIATE FOR PRIVACY FOLDER          **SECTION 5**